UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JOSE MANUEL VARGAS-HERNANDEZ, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 2:26-cv-00095-JPH-MKK |
| BRISON SWEARINGEN Sheriff, Clay County, Indiana, *et al.*, | ) ) ) ) |
| Respondents. | ) ) |
| YONAHIKA SARAY AVILA URBINA Next Friend of Jose Manuel Vargas-Hernandez, | ) ) ) ) |
| Interested Party. | ) |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Mr. Vargas-Hernandez was arrested pursuant to an administrative warrant and is currently detained by U.S. Immigration and Customs Enforcement (ICE) at the Clay County Jail. He has petitioned the Court for a writ of habeas corpus compelling the respondents to either release him from detention or afford him a bond hearing. For the reasons that follow, the Court grants the petition and orders Respondents to provide Mr. Vargas-Hernandez with an individualized bond hearing or release him by **5:00 p.m. on March 6, 2026**.

**I. Facts**

The parties do no not dispute the following material facts.

1

Mr. Vargas-Hernandez is a Venezuelan national. He entered the United States in 2022 near Eagle Pass, Texas. Border Patrol agents apprehended Mr. Vargas-Hernandez, determined that he was not admissible, initiated a removal proceeding, and released Mr. Vargas-Hernandez on his own recognizance pending resolution of the removal proceeding. Dkt. 13-3 at 2.

The parties have not provided evidence of Mr. Vargas-Hernandez's conditions of release, but it's undisputed that he was required to check in periodically. When he did so on January 21, 2026, he was taken into custody by ICE officers pursuant to an administrative warrant issued under 8 U.S.C. § 1226. Dkt. 13-2. Mr. Vargas-Hernandez remains in ICE custody at the Clay County Jail.

On February 11, 2026, Ms. Avila Urbina filed a habeas petition on Mr. Vargas-Hernandez's behalf, representing herself as Mr. Vargas-Hernandez's domestic partner and next friend. Dkt. 1.

The Court held a telephonic hearing on February 20, 2026. Dkt. 12. Mr. Vargas-Hernandez and Ms. Avila Urbina testified about their relationship and Mr. Vargas-Hernandez's inability to bring this habeas petition on his own.

## II. Next Friend Standing

Respondents ask the Court to dismiss this case on grounds that Ms. Avila Urbina lacks standing to bring this habeas petition as Mr. Vargas-Hernandez's next friend. They agree that *Whitmore v. Arkansas* supplies the controlling standard. Dkt. 13 at 8; dkt. 14 at 3. Under *Whitmore,* a next friend must establish "an adequate explanation—such as inaccessibility, mental

2

incompetence, or other disability—why the real party in interest cannot appear on his own behalf;" that she is "truly dedicated to the best interests of" the real party in interest; and that they share "some significant relationship." 495 U.S. 149, 163–64 (1990).

Mr. Vargas-Hernandez testified that he is incapable of pursuing a habeas case without assistance while incarcerated at the Clay County Jail. First, he cannot communicate effectively in English. Mr. Vargas-Hernandez required the services of an interpreter to participate in the telephonic hearing. Ms. Avila Urbina also required the services of an interpreter for the hearing, but she testified that she was able to prepare court filings in Spanish and translate them into English and translate filings from the Court and the respondents from English to Spanish. Her submissions demonstrate that she has been able to do this capably.

In addition to the language barrier, Mr. Vargas-Hernandez testified that he lacks access to a law library and the materials he would need to bring a habeas petition effectively on his own. The Clay County respondent has provided an affidavit from a Jail officer describing broadly that detainees are able to access research materials and translation services. *See generally* dkt. 14-1. This does not, however, cast into doubt Mr. Vargas-Hernandez's testimony that he believes he is not capable of litigating this time-sensitive matter himself while incarcerated. The federal respondents further argue that Mr. Vargas-Hernandez is represented by counsel in his removal proceeding, dkt. 13 at 10 n.2, but they

cite no authority for the proposition that this is dispositive to determining whether Ms. Avila Urbina may serve as next friend.

As to the second and third elements, Mr. Vargas-Hernandez and Ms. Avila Urbina have shared a household and expenses for years. Mr. Vargas-Hernandez testified that he trusts Ms. Avila Urbina to represent his interests, even knowing that the result of this case may limit his ability to challenge his detention again in the future. The federal respondents argue that these facts are not sufficient to satisfy *Whitmore* and emphasize that Mr. Vargas-Hernandez and Ms. Avila Urbina do not share a familial or formal legal relationship, s*ee* dkt. 13 at 9. Respondents do not, however, cite controlling authority holding that such formality is required for next friend standing.

Finally, the federal respondents argue that a non-attorney next friend may not litigate a case without assistance from an attorney. *Id.* at 10. But two of the cases cited are distinguishable because they involve next friends appearing on behalf of minors. *Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010) ("One consequence of the normal rule is that a next friend may not, without the assistance of counsel, bring suit *on behalf of a minor party*.") (emphasis added); *Navin v. Park Ridge Sch. Dist. 64*, 270 F.3d 1147, 1148 (7th Cir. 2001) ("Patrick was free to represent himself, but as a non-lawyer he has no authority to appear as J.P.'s legal representative."). And the third case does not concern next friend standing. *See Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 830–31 (7th Cir. 1986) (discussing lay advocacy). So, the authorities cited by Respondents are not

4

controlling here as to whether Ms. Avila Urbina may serve as next friend for Mr. Vargas-Hernandez.

In sum, Ms. Avila Urbina and Mr. Vargas-Hernandez have satisfied what *Whitmore* requires. Mr. Vargas-Hernandez has made clear that he believes he is incapable of proceeding on his own and that he consents to Ms. Avila Urbina pursuing the case on his behalf. The Court therefore denies Respondents' request to dismiss this action for lack of standing.

### III. Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Mr. Vargas-Hernandez argues in his petition the respondents have violated his constitutional rights to due process by arresting him during a regular check-in appointment, without any aggravating circumstances, and detaining him even though his removal from the United States is not reasonably foreseeable. Dkt. 1. The respondents answer that 8 U.S.C. § 1225(b)(2) *requires* that Mr. Vargas-Hernandez be detained for the duration of his removal proceeding. Dkt. 13. Mr. Vargas-Hernandez replies that the respondents' invocation of § 1225(b)(2) is not supported by law and that he is entitled to a bond hearing under § 1226(a).

The Court finds that Mr. Vargas-Hernandez's detention is governed by § 1226(a) and that it is unlawful because he has not been afforded an individualized bond hearing.

**A.     8 U.S.C. §§ 1226 and 1225**

At issue here are 8 U.S.C. § 1226 and § 1225.[1] While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

Section 1226(a) provides:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—

    (1) may continue to detain the arrested alien; and

    (2) may release the alien on—

        (A) bond . . . ; or

        (B) conditional parole . . . .

---

[1] While Mr. Vargas-Hernandez's petition does not advance a § 1226(a) argument, Respondents put that issue before the Court by arguing that his detention is required by § 1225(b)(2). Further, Mr. Vargas-Hernandez argues in reply that § 1226(a) governs his detention and entitles him to a bond hearing. The issues of whether § 1225 or § 1226 applies and whether Mr. Vargas-Hernandez is eligible for bond are presented by the parties and therefore properly before this Court.

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking*

7

*admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

**B.    Mr. Vargas-Hernandez's Bond Eligibility Under § 1226(a)**

The record reflects that Mr. Vargas-Hernandez is eligible for a bond hearing under § 1226(a).

The Court has previously determined that considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States rather than undocumented aliens like Mr. Vargas-Hernandez who have lived in the interior of the United States for years. *See Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025). As the Court has previously explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice.[2] *See, e.g., Alejandro*, 2025 WL

---

[2] The Court incorporates by reference its more fulsome statutory interpretation of 8 U.S.C. §§ 1226 and 1225 and corresponding analysis of the circumstances to which

2896348, at *5–8.

Respondents cite some contrary decisions but concede that this Court's previous analysis "control[s] the result in this case should the Court adhere to the legal reasoning in those prior decisions." Dkt. 13 at 1-2. Respondents offer no binding authority in the other direction, and the Court declines to depart from its previous reasoning. The Court has considered the Fifth Circuit's recent decision in *Buenrostro-Mendez v. Bondi*, No. 25-20496, --- F.4th ---, 2026 WL 323330, at *4 (5th Cir. Feb. 6, 2026), finding that 1225(b)(2)(A)'s mandatory detention provision applies to all aliens who have been present in the United States for a substantial length of time and are arrested in the interior of the United States rather than at its border. The Court is not convinced, however, that the Seventh Circuit will follow *Buenrostro-Mendez* and therefore continues to rely on *Castañon-Nava v. U.S. Dep't of Homeland Sec.* as persuasive precedent. 161 F.4th 1048, 1060-62 (7th Cir. 2025); s*ee Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("[a]t a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' [161 F. 4th at 1061]. But the statutory-interpretation issue that the opinion resolved was one purely of *law*, and any adjustment to the *factual* record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with

---

those statutes apply. *See Alejandro*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *5–8.

9

*Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

The facts of this case also reflect that Mr. Vargas-Hernandez's detention must be governed by § 1226(a). When immigration officials encountered Mr. Vargas-Hernandez at the border, they did not detain him through the pendency of his removal proceedings as the respondents now insist the law requires. Instead, they released him subject to conditions of supervision, an action consistent with § 1226(a) rather than § 1225(b)(2). When immigration officials arrested Mr. Vargas-Hernandez, that was done through an administrative warrant under § 1226. The government's actions and its paperwork reflect that Mr. Vargas-Hernandez's detention is governed by § 1226 rather than by § 1225.

In short, the parties' submissions demonstrate that Mr. Vargas-Hernandez's detention is authorized only by § 1226(a), entitling him to consideration of bond. The respondents concede that Mr. Vargas-Hernandez has not received a bond hearing.[3] Accordingly, his continued detention without

---

[3] The respondents argue that Mr. Vargas-Hernandez's claims are premature because he has requested a bond hearing. Dkt. 13 at 11. However, the respondents do not cite a statute requiring Mr. Vargas-Hernandez to request bond from an immigration judge before seeking habeas relief. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). In similar circumstances, other district courts determined that the petitioner was not required to exhaust administrative remedies because doing so would be futile given *Matter of Yajure Hurtado*'s holding. *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) ("Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change its position [once] the BIA has predetermined the statutory issue.") (internal quotes and citation omitted); *see also Ceballos Ortiz v. Olson, et al.*, 2:25-cv-00548-MPB-MJD, dkt. 18 at 2–3, 6–9 (S.D. Ind. Nov. 19, 2025) (finding exhaustion would be futile, proceeding to merits, and ordering that petitioner be

10

consideration of bond violates the INA, and he is entitled to habeas corpus relief. Accordingly, the Court concludes that Mr. Vargas-Hernandez is entitled to a bond hearing under § 1226, and it declines to reach his other arguments.

### IV. Scope of Relief

Mr. Vargas-Hernandez is entitled to habeas relief because his continued detention without a bond hearing violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Immediate release is the customary remedy in habeas proceedings. *See Dep't of Homeland Security v. Thursaissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, ordering an individualized bond hearing is appropriate here because detention under § 1226(a) is discretionary and the violation of the statute arises from Mr. Vargas-Hernandez's detention without a bond hearing.

As a final matter, the respondents contend that, even if § 1226 governs Mr. Vargas-Hernandez's detention, its refusal to consider bond is unreviewable pursuant to § 1226(e). Dkt. 13 at 17. There is no evidence, however, that Mr. Vargas-Hernandez will have a bond hearing where the Immigration Judge will consider whether to grant bond instead of determine that it lacks jurisdiction to

---

provided a bond hearing). The Court finds the reasoning applied in these cases persuasive and concludes that Mr. Vargas-Hernandez was not required to exhaust administrative remedies because doing so would be futile.

11

do so. In fact, Respondents contend that Mr. Vargas-Hernandez is ineligible for a bond hearing. Because an immigration judge has not "denied" or "revoked" bond, § 1226(e) does not have any bearing on this petition. Mr. Vargas-Hernandez has not had an opportunity to meaningfully request and receive an individualized bond hearing.

## V. Conclusion

The Court **grants** the petition to the extent that no later than **5:00 p.m. on March 6, 2026**, Respondents must either: (1) provide Mr. Vargas-Hernandez with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release Mr. Vargas-Hernandez from custody, subject to any conditions of supervision in effect before his arrest. No later than **5:00 p.m. on March 7, 2026**, Respondents must file documentation certifying that they have either provided Mr. Vargas-Hernandez with a bond hearing or released him.

The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Date: 3/2/2026

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JOSE MANUEL VARGAS-HERNANDEZ
CLAY COUNTY JAIL
Inmate Mail/Parcels
611 E. Jackson Street
Brazil, IN 47834

12

YONAHIKA SARAY AVILA URBINA
10433 S. Campbell Ave.
Chicago, IL 60655
hayberthsamuel.16@gmail.com

Rachel Dever
Church Church Hittle and Antrim
rdever@cchalaw.com

Jeffrey D. Preston
DOJ-USAO
jeffrey.preston@usdoj.gov

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com